# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

CAROL ROBINSON

**DEFENDANTS**

SEPTA, ALETHA EVANS, MARK LASHLEY

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Olugbenga O. Abiona, 121 South Broad Street, Suite 1200, Philadelphia, PA 19107; 215-833-8227

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Americans with Disability Act

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE   Kelley B. Hodge     DOCKET NUMBER 22-cv-04572

DATE
7/30/2024

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Philadelphia, PA _____

Address of Defendant: _____ 1234 Market Street, Philadelphia, PA 19107 _____

Place of Accident, Incident or Transaction: _____ Philadelphia _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ 22-04572 _____   Judge: ___ Kelley B. Hodge ___   Date Terminated: ___ still pending ___

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☑   No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☑ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 7/30/2024 _____   *Must sign here*   _____ 57026 _____
_____   _____
*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.    Federal Question Cases:**

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☑ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
*(Please specify):* _____

**B.    Diversity Jurisdiction Cases:**

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
*(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Olugbenga O. Abiona, Esquire _____, counsel of record *or pro se plaintiff*, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 7/30/2024 _____   *Sign here if applicable*   _____ 57026 _____
_____   _____
*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

--------------------------------

CAROL ROBINSON                                  : CIVIL ACTION No.
          Plaintiff,                     :
   vs.                                          :
                               :
SEPTA                                           :
ALETHA EVANS                                    :
MARK LASHLEY                                    :
          Defendants                   :

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1.      Plaintiff in the above captioned matter, claims a sum in excess of One Hundred Thousand Dollars ($100,000.00) in damages and upon her causes of action, avers as follows:

2.      This action for monetary damages and other appropriate relief is brought by Plaintiff to redress violations by Defendants, Southeastern Pennsylvania Transportation Authority (hereinafter "SEPTA"), Aletha Evans (hereinafter "Evans"), and Mark Lashley, (hereinafter "Lashley") of rights secured to Plaintiff by the laws of the United States of America and the Commonwealth of Pennsylvania.

3.      This action arises under the Americans with Disabilities Act, (ADA), and the Pennsylvania Human Relations Act, (PHRA), which prohibit retaliation because an employee engages in protected activities under these statutes, and is brought by Plaintiff to redress arbitrary, malicious, reckless, improper, unlawful, willful, and deliberate retaliation by Defendants SEPTA, Evans and Lashley.

1

## II.    <u>JURISDICTION AND VENUE</u>

4.    The jurisdiction of this Court is invoked pursuant to Title 28 U.S.C. §1331, which provide for the original jurisdiction of Plaintiff's claims arising under the laws of the United States of America.    On May 23, 2024, Plaintiff received her right to sue notice on these claims from the EEOC claims. (See attached).  Plaintiff has exhausted her administrative remedies on her claims before bringing this action.

5.    The venue of this Court is proper pursuant to the dictates of Title 28 U.S.C. §1391 (c).

### III.    <u>PARTIES</u>

6.    Plaintiff, Carol Robinson is a citizen of the United States, who currently resides in Philadelphia, Pennsylvania.

7.    Defendant, SEPTA, is a municipal agency, with its offices located at 1234 Market Street, Philadelphia, PA 19107. Defendant Aletha Evans is being sued in her individual capacity and upon information and belief is a resident of Philadelphia, Pennsylvania. Defendant Mark Lashley is being sued in his individual capacity and upon information and belief is a resident of Philadelphia.

### IV.    <u>BRIEF STATEMENT OF FACTS</u>

8.    Plaintiff was hired by SEPTA on January 28, 1988, as a Bus Operator.

9.    Plaintiff was promoted to Director of Control Center Bus Operation in or about September 2019.

10.    Plaintiff has on numerous occasions opposed and challenged conducts by her supervisors and others at SEPTA that she felt was either discriminatory or retaliatory against an employee she supervised, Robert Gardner, (hereinafter "Gardner") a Control Center

2

Manager in Bus Operations, who is a person with known disabilities and who had approved accommodations for his disability.

11.     Plaintiff was also a witness for Mr. Gardner providing favorable information about Mr. Gardner to SEPTA during the investigation of Mr. Gardner's requests for accommodations because of his disability.

12.     Plaintiff was thereafter subjected to retaliatory harassment and other retaliatory actions for engaging in protected activities under the ADA.

13.     During the week of July 8th to 14th, 2018 Plaintiff began training preparations for two (2) new Control Center Managers, one of which was Robert Gardner. The first training day was July 16th, 2018. The week prior while in Chief Officer Aleta Evans' (hereinafter "Evans") office along with Director Michaeleen Benson, (hereinafter "Benson") they were having a discussion about the training itinerary.

14.     Immediately the conversation went from that to these SEPTA officials saying, "the one with the glasses", Robert Gardner was a problem. Plaintiff asked them, "what do you mean?" Benson said she was informed that Gardner is supposed to have a medical condition that requires him to wear sunglasses indoors.

15.     Mr. Gardner has records at SEPTA requesting and being provided with ADA accommodations for his disabilities; one of which required that he wears sunglasses because of light sensitivities.

16.     Benson said that Gardner's previous supervisor, Creadan, warned her that they should drop him from training and from the department.

17.     Almost every day after training, Benson or Evans would ask if Gardner was giving Plaintiff any problems. Plaintiff explained to them that she was an experienced trainer

and not much was a challenge for her and that things were ok. Benson warned Plaintiff that Plaintiff should let Gardner go rather than have a problem later.

18.    During training, Gardner made a suggestion to create a sort of miscellaneous Controller to perform various duties to enable the remaining shift to focus on standard duties. Plaintiff told him that she would run it by Benson and Evans and get back to him.

19.    Plaintiff told Benson and Evans about Gardner's idea and even explained how it might be something worth trying. They both began cursing, saying, "Who does that mother fucker think he is? He can go back where he came from".

20.    Six months or so later they implemented the idea and gave it a name (TEXT Controller). Plaintiff asked them if they were going to acknowledge Gardner for contributing the idea and Ms. Evans said, "this was not his idea, it was mine and anyway, I can't stand the mother fucker". Plaintiff also heard Evans tell her superior, the Assistant General Manager, that the idea was hers.

21.    In or about January 2019; A few months after graduation, Gardner was able to pick a shift. He picked a 10 am to 6 pm shift for the spring. He was repeatedly skipped during the overtime rotation and when Plaintiff asked Benson and Evans why or what was the reason, they would become agitated with Plaintiff and asked her, "why do you care?" **Plaintiff told them that she felt their treatment of Gardner was unfair**.

22.    Plaintiff was in Evan's office when Evans instructed Benson to change Gardner's shift to report at 2pm instead of 10am. There was no legitimate reason other than to harass Gardner.

23.    Plaintiff opposed their discriminatory action towards Gardner and commented, "you both need to stop and what's the reason for this?" Evans said, "because that (MF) don't tell

me what to do. I can change his shift whenever I want". Benson said, "the policy says, schedules are subject to change". The fact is, they changed his shift and then paid someone else overtime to fill the shift.

24.    Between in or about January and February 2019, there was a meeting in Command Center; Plaintiff, Evans, Gardner and other Controllers were in attendance. During the round table, Evans asked everyone for their opinion about the department. As Gardner began to speak, Evans began to scream at him. Evans later told Plaintiff that she can't stand him, and she didn't care what he thought. Plaintiff told Evans that Evans should give Gardner an opportunity to explain himself and she began to scream at Plaintiff, "No, No, No".

25.    Plaintiff noticed that Evans would become agitated any time Plaintiff would bring to Evans' attention that she was treating Gardner differently. On several occasions, Evans would say, "these ADA people have too many rights".

26.    In or about March 2019; Plaintiff talked to Benson with the hope of convincing her to change her mind about cooperating in the unnecessary changing of Gardner's schedule. Instead, Benson told Plaintiff that Evans had suggested that Benson and Plaintiff should complain to SEPTA's EEO that they were afraid of Robert Gardner because he has a violent condition (PSTD) for the purpose of getting Gardner out of the department. Plaintiff told Benson to inform Evans **that Plaintiff would never participate in something like that, and that Gardner doesn't scare Plaintiff**.

27.    In or about August 2019, Gardner had a difference of opinion with a street supervisor on the radio. Evans ordered Plaintiff and Norton Wilder to give Gardner a written counseling. The matter did not warrant paper documentation and since Plaintiff had

talked with him about the matter, Plaintiff felt the discussion was enough and did not comply with Evans wishes to have Gardner documented for something that did not warrant it so she could get rid of Gardner from the department. Evans threatened to discipline Plaintiff and the AD.

28. Plaintiff had only been promoted several weeks when SEPTA's EEO contacted Plaintiff about an interview regarding Gardner and the matter regarding the unnecessary change of his shift. Plaintiff notified Evans that she was going downstairs to SEPTA's EEO that morning and Evans said, "I'm going with you". Plaintiff was shocked. Evans sat directly beside Plaintiff and each time Plaintiff would answer a question, Plaintiff would feel Evans nudge her. Jennifer Hinderliter asked Plaintiff if she had seen a shift change like this before and Plaintiff said no. Plaintiff thought if Evans had this much nerve in the EEO office then Plaintiff was in trouble. So, Plaintiff stopped answering any more questions at that point. Evans was at this meeting to intimidate Plaintiff about answering the EEO office's questions about Gardner.

29. In or about August 2019, a VARIDESK was installed for Gardner's accommodation at console 7. Evans had repeatedly stalled the installation of the desk because she didn't want Gardner to have it. Plaintiff asked Evans if she was afraid of SEPTA's EEO and she said, "fuck them". She began to intentionally keep Plaintiff and Mr. Wasserkrug (SEPTA's EEO Specialist) separated and kept Plaintiff out of the loop. Wasserkrug was obviously relieved to work with Plaintiff, but Evans would circumvent their opportunities to meet to provide Gardner with his requested accommodation for his disabilities. Gardner finally received the desk two (2) months later than he should have.

30.   There were several other accommodations for Gardner's disabilities that were approved by Scott Wasserkrug or EEO that **Evans would intentionally stall or delay as well**. Evans would say, "they will have to make me buy it or give me a directive". These included, a stool, keyboard, mouse, etc.

31.   In or about July 2019, Plaintiff purchased a battery pack for the headset SEPTA was providing for Gardner's accommodation, out of pocket at a cost of $60.00 because Evans failed to respond to any of Plaintiff's request to purchase the item. The battery was only available through a private company. Whenever Plaintiff mentioned the need to replace various items to meet Gardner's accommodation, Evans would ignore Plaintiff, resulting in Plaintiff making the purchases out of pocket.

32.   Plaintiff was present when Evans and Benson conspired to prevent Robert from working as the TEXT Controller by creating a rule that the assignment had to be performed at a specific desk (console1). Because the VARIDESK was at console 7, Gardner would not be able to do the assignment.

33.   On or about October 15, 2019, at about 13:30, Evans entered Plaintiff's office and stated that Gardner would never work as a TEXT Controller unless she was given a directive from her boss or never as long as she was the Chief Officer. **Plaintiff explained to Evans that it was a violation of Gardner's rights to not provide him an opportunity to perform this assignment and Evans began to curse and scream, "excuse me and fuck him"**.

34.   Subsequent to Plaintiff opposing and challenging Evans and other management officials in the Control Center Department violating Gardner's ADA rights, Plaintiff was

subjected to antagonistic and animosity behavior by Evans and Lashley, Evans deputy Chief.

35.     On or about October 31, 2019, after Plaintiff's incidental meeting with Wasserkrug on the 9th Floor of SEPTA's Headquarters, **Evans saw them talking and later scolded Plaintiff**. She asked, "what are you talking to him about?" Plaintiff explained that they were talking about accommodations for footwear. Evans said that she thought they were talking about Gardner and his becoming a TEXT Controller. Evans said that "this will never happen because I will never put another VERIDESK in at console 1".

36.     On or about December 2, 2019, at about 1 p.m., Plaintiff, A. Locks and N. Wilder were called into Evans' office. She talked about the next picking and other topics. Plaintiff mentioned that Gardner had expressed an interest in becoming a Backfill Chief.  Plaintiff also told Evans that Plaintiff and Wasserkrug were working to have the console 1 configured for Gardner's accommodation.  Evans says about Gardner becoming a Backfill Chief, "not as long as I am Chief Officer".  Plaintiff reiterated that they could take a look at him as Backfill maybe in a year. Evans said, "he gets nothing else unless I leave or drop dead; whichever comes first". Evans gets up to go for a smoke break and as they were leaving her office Evans says, "**all we got to do is go downstairs and tell them that he is crazy and get him out of here. I already talked to Labor Relations, and they said if he can't adjust to the job responsibilities then he can be disqualified**". Plaintiff told Evans that she was working with Gardner to see that things worked out and his accommodations were met. Evans said, "huh you better than me".

37.     On or about December 23, 2019, at about 10:00 a.m., Evans called Plaintiff into her office to discuss Daryl Walton and Robert Gardner's sick turn ins. Evans scolded

Plaintiff because Evans suggested that Plaintiff should call them at home to ask for a sick note, but Plaintiff did not. Plaintiff reiterated that Walton and Gardner had FMLA approvals. Evans asked, "What is your problem? You better do what I said because them (MF) don't respect you". Plaintiff did not call Gardner because intermittent FMLA leave was one of the ADA accommodations given to Gardner because of his disabilities, and Gardner did not have to provide any note to be out on his approved ADA intermittent FMLA leave.

38.    The above incidents and Plaintiff's resistance to participate in the violation of Gardner's rights and rights of others resulted in incidents of retaliation and retaliatory hostile work environment by Evans in the form of **falsely and negatively degrading Plaintiff's evaluation, intentionally misguiding Plaintiff on various matters, Plaintiff being excluded from important work-related conversation, information and meetings. Plaintiff was sometimes shamed by Evans. Plaintiff was screamed at on several occasions in the open floor in the presence of other colleagues by Evans.**

39.    Plaintiff completed the majority of her performance goals for the fiscal year 2020 between September 21, 2019, when Plaintiff was promoted to Director and October 2020. Due to the COVID 19 pandemic and the offices were shut down in March 2020, and the way employees conducted business changed. There were twenty-seven (27) goals of which Plaintiff completed twenty-three (23) which was above normal considering the employees dealt with COVID and a major malware attack in 2020 in SEPTA's computer systems that SEPTA just begun to recover from in 2021. Twenty-three of Plaintiff's direct reports only completed 20% of their goals and received 3.5% and up of merit increases. Yet, **Plaintiff was given 2% merit increase and needs improvement by**

9

**Evans.** Evans made false statements in Plaintiff's evaluation in October 2020 that resulted in the lowered 2% merit increase. Plaintiff referred the matter to SEPTA's Human Resources and the needs improvement rating was reversed to "meets expectations", but Plaintiff still only received a total of 2.75% merit increase when the minimum received in the department was 3.5%, a reduction of 0.75% of Plaintiff's annual salary.

40.    On or about August 5, 2020, at about 08:30 a.m., Evans was standing in the doorway of Plaintiff's office **and Evans began to scream at Plaintiff** about an error made in scheduling by Evans. **Evans screamed**, "you got to do better with the schedule. Why did Hiram leave at 1200 yesterday?" Plaintiff calmly replied, "**you changed his schedule remember, I was at the OEM building**". Evans repeatedly screamed at Plaintiff, "you gotta do better".

41.    On or about August 6, 2020, at about 10:30 a.m., Evans and Plaintiff had been discussing Plaintiff's previous day's meeting at Office of Emergency Management ("OEM"). Plaintiff asked for permission to work with OEM in order to better disseminate information between the agency and SEPTA's. Evans agreed. At about 1140 a.m., Plaintiff notified OEM that her supervisor, Evans, had given consent for them to proceed once they developed a plan and Plaintiff copied Evans on the email. Thereafter, Evans entered Plaintiff's doorway and **began screaming, "are you calling me a liar, are you calling me a fucking liar**". Plaintiff replied, "excuse me. Did I do something wrong?" Evans responded "No", but she kept screaming at Plaintiff. Each time Evans did this either Marcus James or Arthur Locks would come into Plaintiff's office to check on Plaintiff.

42.    On or about September 21, 2020, at about 11:00 a.m., a meeting for hiring new
       Controllers were held: in attendance on teams meeting were Plaintiff, Norton Wilder,
       Tamar Swain, and Carol O'Neal. Norton Wilder was attempting to log on when **Evans**
       **suddenly appeared screaming at Plaintif**f, "where is Norton? Where is he?" Plaintiff
       tried to explain to Evans that he was having a problem logging on. But, Evans had
       already embarrassed Plaintiff and Norton **by arbitrarily jumping on the meeting and**
       **screaming at Plaintiff.**

43.    Immediately following the meeting with HR, Plaintiff entered Evans' office and
       requested to meet with Scott Sauer (hereinafter "Sauer") (AGM). This was before the
       negative evaluation had been presented to Plaintiff. The first meeting was scheduled on
       September 24, 2020, at 10am. The secretary cancelled the meeting. The second meeting
       was scheduled for October 7, 2020, at 9 am and this was also later cancelled by the
       AGM's secretary. However, Evans lied and told HR that Plaintiff didn't show up for the
       meeting, but Plaintiff was in her office when the cancellation email was sent. By this time
       the negative FY 2021 evaluation had been presented to Plaintiff. The AGM had neglected
       to commit to any of the meetings that he had scheduled. Plaintiff told Evans that she
       wanted a meeting with Sauer, otherwise she would reach out to the General Manager.
       The final meeting was scheduled for November 3, 2020, at 11:30 a.m. Plaintiff explained
       and described everything that she had entered on her rebuttal to Evans' FY 2021
       evaluation. Plaintiff even presented a copy to the AGM. He listened and stated that he
       would read the rebuttal and get back to Plaintiff. But, months passed and Plaintiff never
       heard from Sauer.

44.     In 2021, Back Up Control Center was fully operational for Plaintiff's department. The final step involved getting Gardner's desk configured at BU Control Center. Plaintiff had met with Wasserkrug and the radio maintenance personnel to complete the setup. Gardner willingly met Plaintiff there to review and give input about the console. He agreed to work a shift there to become acclimated. During the evening Gardner began to experience discomfort. When Gardner called Plaintiff, she apologized and told him that he could leave for the day, and she asked if he needed medical attention. He declined medical attention and left for the day. It was obvious that SEPTA had more work to do before the desk could accommodate Gardner. Gardner was instructed to continue to report to 1234 Market Street office until they completed the set up at BU Control Center.

45.     On January 19, 2021, at about 10:43 a.m., Plaintiff had a meeting with radio maintenance at BU Control Center at Frankford Transportation Center for the purpose of configuring the console and radio for Gardner. Plaintiff notified Evans via email that she was on her way to BU Control Center. Once arriving there, Plaintiff called Evans on her cell phone to report their findings. Plaintiff explained that they had more work to do in terms of getting it situated correctly. Evans said, "I told you what I'm going to do I'm gonna get this (MF) outta here. Let him keep on. If he wants to act crazy, then crazy will get him disqualified and moved the fuck out of my department. Let him keep playing, he's going to be up there every day". Plaintiff assured her that they had made progress in the set up and the call ended.

46.     On or about March 18, 2021, Plaintiff underwent a series of consultations with SEPTA's Employee Assistant Program –Dr. Dorothy Montelbaum because of the retaliatory harassment and actions by Evans.

12

47.    In or about May 2021, Plaintiff created a picking for the summer that was vetted and
       approved by Aleta Evans and Mark Lashley.

48.    On or about May 29, 2021, the picking was distributed to Control Center Management.
       The Picking was scheduled to take place on June 14, 2021, and go into effect on June 20,
       2021. The afternoon of the picking, Lashley entered Plaintiff's office and stated that he
       was going to cancel the picking. Plaintiff asked "why, what happened?" Lashley stated
       that the people that picked the overnight shift (referring to Gardner) are unreliable and
       that "these FMLA people don't come to work". Plaintiff replied, "Mark, you can't do a
       re-pick because you don't like the people on a particular shift." He said, "Oh yea? They
       are just too unreliable". Lashley said, "**I am sick and tired of being between you and
       Aleta**".

49.    On June 1, 2021, at about 10:30 a.m., Evans and Lashley requested that Plaintiff meet
       with them in Command Center. During the meeting Evans announced that the rating
       associated with Plaintiff's FY 2021 evaluation was reversed. She continued by saying, "I
       don't agree with the decision." Plaintiff began talking about the day's events, but **Evans
       and Lashley began to yell and scold Plaintiff about the FMLA sick book entries of
       Robert Gardner** and others. Plaintiff assured them that she had consulted with SEPTA's
       EEO, Labor Relations and Legal regarding how to handle FMLA matters. **They
       continued to scold Plaintiff** saying that she had abdicated her responsibilities by not
       counseling managers that call out. Plaintiff wondered why they would encourage Plaintiff
       to do something illegal. Plaintiff reiterated that she would not do anything to violate
       anyone's rights.

50.    On or about August 27, 2021, CCM Walton was scheduled for a random drug test. Plaintiff had worked on August 26, 2021, but explicitly told Lashley that she would be in the sick book and taking Percocet for pain. Plaintiff forwarded an email at 04:00 a.m. that morning to reiterate that she would not be coming in on August 27th. Plaintiff had planned to occasionally check her email but because she was not used to taking Percocet, she was not lucid or awoke. Lashley emailed Plaintiff a correspondence regarding the RDT for Walton which she forwarded to the Assistant Director on duty. Also, Lashley admitted that he did not remember that Plaintiff was absent and did not realize that Plaintiff was absent until 4 p.m.

51.    On or about August 28, 2021, Lashley issued Plaintiff a one-day suspension based on false allegations. On September 1, 2021, Plaintiff appealed Lashley's retaliatory discipline of one day suspension to SEPTA's EEO office. Plaintiff's appeal was upheld.

52.    However, on or about November 21, 2021, Lashley used this incident as **a pretext to downgrade Plaintiff's evaluation below the average merit increase and gave Plaintiff a "needs improvement" rating in the FY2022 evaluation**. Lashley made false statement on the evaluation, stating that Plaintiff had been suspended. SEPTA's Human Resources decided that Lashley must submit a letter to reverse the comment that Plaintiff was suspended in his evaluation.

53.    On December 17, 2021, Lashley sent the letter to SEPTA's Director of Human Resources. However, the lower 2.5% merit increase that was given to Plaintiff because of the "Needs Improvement" evaluation by Lashley, that was approved by Evans was not changed. Plaintiff's peers were given at least a merit increase of 3.5%, resulting in Plaintiff losing 1.0% of her annual income; a loss of $1,631.

54.   On November 16, 2022, Plaintiff initiated a civil action against Defendants in which Plaintiff asserted that she was subjected to retaliatory harassment and hostile work environment, retaliatory performance evaluations and denial of higher annual merit increases by Defendants because she opposed, challenged, refused to participate in Evans' and Lashley's actions and conduct of violating Gardner's ADA, PHRA and FMLA rights, and participated as a favorable witness in Gardner's requests for accommodation for his disabilities under the ADA; Civil Action No. 22-cv-04572-KBH. (Hereinafter referred to as "First Action").

55.   On February 23, 2023, Plaintiff filed her Amended Complaint in the First Action.

56.   While the First Action was still pending, in or about December 2023, Plaintiff applied for the posted position of Senior Director, Control Center Operations, and she was thereafter scheduled to be interviewed for the position at 8:00 a.m., on February 21, 2024.

57.   On February 21, 2024, Plaintiff arrived early at the interview location, 1234 Market St. 19th floor, and made herself visible to the panel at 07:45 a.m. for the 8 am interview appointment.

58.   The panel members were, seated left to right, Jessical Herman, Aleta Evans (hiring manager), and Alex Bonecorse.

59.   Plaintiff stuck her head in the door at 07:55 a.m. for the interview, and Ms. Evans told Plaintiff to come back in 10 or 15 minutes.

60.   Plaintiff returned to the room at 08:10 a.m. as instructed. But immediately after she entered the room, Ms. Evans began to stress that Plaintiff only had one hour for the interview. She specifically stated in a very harsh tone to Plaintiff, "You have (1) hour, only an hour"!

15

61.   The time for an interview had never been emphasized like that before at any interview
      Plaintiff was part of at SEPTA.

62.   Plaintiff was being rushed through this interview by Ms. Evans and the other panel
      members. Plaintiff was met with total antagonistic behavior by the entire panel members.
      They made no eye contact with Plaintiff most of the time, their body language was cold.
      Their tone towards Plaintiff was harsh. It was clear they had discussed Plaintiff prior to
      being invited in for this interview. Ms. Evans was Plaintiff's supervisor that Plaintiff had
      previously complained subjected her to retaliatory actions because Plaintiff engaged in
      protected activities under the ADA and PHRA relating to Mr. Gardner.

63.   Several times during the interview, Plaintiff would ask the panel members questions, but
      none of them answered or acknowledged Plaintiff's question. None of them would look
      up, acknowledge Plaintiff, or respond to her questions.

64.   The first question Plaintiff was asked at the interview was, "tell us about your education,
      work experience and how this makes you the best candidate for the job". Plaintiff began
      to respond, proving her educational background and wealth of experience at SEPTA and
      the Control Center Department. After a few minutes, Ms. Bonecorse yelled at Plaintiff,
      "Its already 08:30!" Yet, they were the ones who started the interview late.

65.   Plaintiff had been a panel member on interviews at SEPTA, and an interview candidate in
      other instances, and never had anything like this happened.

66.   This conduct by the panel members violated SEPTA's policies and procedure for
      interviews of this nature.

67.   Plaintiff later discovered that the candidate's interview time and date was selected by Ms.
      Evans, which was also unprecedented. Typically, candidates receive a calendar with

multiple options from the Recruiter and are asked to select one. Plaintiff only received one interview date and time with no other options. Nonetheless, Plaintiff arrived ahead of the time slot, was not allowed to enter the room but was asked to return in 10 to 15 minutes by Ms. Evans.

68.    On March 22, 2024, Plaintiff asked the Recruiter, Ms. Hoehn if there was a pool for the Senior Director's position. Ms. Hoehn said she was not allowed to say while the process was still going on.

69.    Plaintiff later found out about the successful candidate for this position at a meeting on April 9, 2024, relating to a reorganization of the Department, that Plaintiff was not invited to by her supervisors, Ms. Evans, and Mark Lashley, who was acting Chief Officer for Ms. Evans during her absence.

70.    Plaintiff was invited to this meeting by the outside agency retained by SEPTA to make a reassessment of the workforce. Plaintiff was not invited to the meeting by either Mr. Lashley or Ms. Evans.  Mr. Lashley was surprised to see Plaintiff at this meeting, and it was at that time that he told Plaintiff that Rayshawn Johnson was offered the Senior Director position which Plaintiff had interviewed for. Plaintiff had seen Mr. Johnson's name on a memo at the meeting that identified him as the Senior Director before Mr. Lashley made this disclosure to Plaintiff.

71.    Mr. Johnson was formerly the Director of Subway-Elevated and Light Rail, Control Center, since 2020, **with less experience and qualification than Plaintiff**.  Plaintiff was more qualified for this position than Mr. Johnson.

72.    On or about April 10, 2024, a day after this meeting, Plaintiff received an email from Ms. Hoehn that Plaintiff was not selected for the position. However, on the same date,

Plaintiff forwarded her March 22, 2024, email again to Ms. Hoehn about the status of her application for the position, Ms. Hoehn did not respond.

73.    In or about 2020, Plaintiff applied for a vacant Senior Director position. Plaintiff found out she was the only applicant for the position. Later, SEPTA discontinued the promotional process for this vacancy, and the position remained vacant for a long period of time. However, **on April 21, 2024**, Defendants sent out an announcement that an external candidate, Yasmean Finney, was hired for that same position.

74.    Essentially, Plaintiff was denied this position on April 21, 2024 when Yasmean Finney was awarded the position, without being afforded the opportunity to interview for the position, nor was she informed that SEPTA was now taking any steps in 2024 to fill the position.

75.    Plaintiff asserts that Defendants subjected her to retaliatory failure to promote her to the vacant positions of Senior Director awarded to Rayshawn Johnson and Yasmean Finney in April 2024 in violation of the ADA and PHRA because she engaged in protected activities under these statutes.

## V.    STATEMENT OF CLAIMS

### COUNT ONE – ADA VIOLATION –Retaliation

76.    Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 75 as if the same were fully set forth at length herein.

77.    The acts and conduct of the Defendants, SEPTA, through its officers, managers, directors, supervisors, employees and agents, Aletha Evans and Mark Lashley as stated above where Defendants subjected Plaintiff to retaliatory failure to promote her to the

18

Senior Director positions in April 2024, because she engaged in protected activities under the ADA, were violations of Plaintiff's rights under the Americans with Disabilities Act.

78.    As a direct and proximate result of the said retaliatory practices of the Defendants, Plaintiff sustained loss of wages and earnings, loss of benefits, loss of future income, loss of back pay, loss of front pay, as well as mental anguish, emotional distress, humiliation, and damages to reputation.

## COUNT TWO- PHRAVIOLATION – Retaliation

79.    Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 78 above as if the same were fully set forth at length herein.

80.    The acts and conduct of the Defendants as stated above where Defendants subjected Plaintiff to retaliatory failure to promote her to the Senior Director positions in April 2024, because she engaged in protected activities under the PHRA were violations of Plaintiff's rights under the Pennsylvania Human Relations Act.

81.    Defendants Aletha Evans and Mark Lashley aided and abetted SEPTA's retaliatory failure to promote Plaintiff to the Senior Director positions in April 2024 in violation of the PHRA.

82.    As a direct and proximate result of the said retaliatory practices of the Defendants, Plaintiff sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, loss of front pay, as well as mental anguish, emotional distress, humiliation, and damages to reputation.

**VI.**        **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully demands judgment against Defendants, and requests that this Honorable Court:

A.        Enter judgment against the Defendants for back pay, front pay, loss income, loss benefits, pre and post judgment interests, costs of suit, compensatory damages, punitive damages against Defendants Aletha Evans and Mark Lashley, attorneys' fees and expert witness fees as permitted by law; and

B.        Award such other relief as the Court may deem necessary and just, including but not limited to an order to make whole

**JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all questions of fact raised by this complaint.

Olugbenga O. Abiona
ABIONA LAW, PLLC
P.O. Box 3326
Cherry Hill, NJ 08034
(215) 833-8227
Attorney ID # 57026
Attorney for Plaintiff

Dated:  July 30, 2024

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Philadelphia District Office**
801 Market St, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 05/23/2024

**To:** Ms. Carol Robinson
4714 Conshohoken Avenue
Philadelphia, PA 19131

Charge No: 530-2024-05750
EEOC Representative and phone:    Legal
Legal Unit
(267) 589-9707

---

### DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By: Karen McDonough
05/23/2024
Karen McDonough
Deputy District Director

**Cc:**
Andrea M Smith
Stradley Ronon Stevens & Young LLP
1234 Market Street
Phila, PA 19107

Kafi D McCaskill
SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY
1234 MARKET ST 9th Floor
Philadelphia, PA 19107

Joseph Catuzzi Esq.
Stradley Ronon Stevens & Young LLP
1234 Market Street
Phila, PA 19107

Danielle Banks Esq.
Stradley Ronon Stevens & Young LLP
1234 Market Street
Phila, PA 19107

Incident  Location
SEPTA
1234 Market Street
Philadelphia, PA 19107

Olugbenga O Abiona Esq.
121 South Broad Steet Suite 1200
Philadelphia, PA 19107

Please retain this notice for your records.